[No. 1479.]

## WILLIAM WILLIAMSON v. THE STATE.

1. THEFT.—EVIDENCE which merely tends to connect the accused with other offenses, distinct from that for which he is on trial, must be excluded. The exceptions to this general rule are confined to cases which relate to *knowledge* or *intent* of the party as to some material fact which, though apparently collateral, had some bearing on the main fact.

2. SAME—VARIANCE—INDICTMENT.—When the indictment alleges ownership of the stolen property to be in some person unknown, and it appears from the evidence that the name of the owner was known to the grand jury, or could, by proper inquiry of the witnesses before them, or accessible to them, have been ascertained by them, then the variance between the allegation and the proof is fatal. See the opinion *in extenso* for state of case to which this ruling applies.

3. SAME—CASE STATED,—The indictment alleged the ownership to be in some person unknown, and the proof of the State tended to show that it was in one B. *Held*, that proper practice required the State to go farther and show that the grand jury did not know the owner or claimant, and could not by reasonable diligence have obtained that information.

4. SAME—EVIDENCE—CONSENT.—When the proof shows that one person owned the property, and another has the possession, management or control of it, the want of consent to the taking of both such parties must be shown, either by the parties themselves, or (if the parties are not accessible and that fact is shown) by circumstantial evidence.

5. VENUE of an offense must be shown in order to authorize a conviction.

APPEAL from the District Court of Navarro. Tried below before the Hon. L. D. Bradley.

The indictment charged the theft, on May 27, 1876, of a steer, the property of some person or persons to the grand jury unknown. The appellant was convicted, and his punishment assessed at confinement in the penitentiary for two years.

A. W. McFall, the first witness for the State, testified in substance that he was cattle and hide inspector for Navarro county in 1876. On the twenty-fourth day of August of that year the defendant brought to Hailey's slaughter pen a dark, dirty-red beef steer, four years old, and the witness was called to inspect the animal, and found that the mark and brands on the animal were not as they were represented in the bill of sale to Hailey, to

whom the defendant had sold it.   The steer was branded with
two T's, each connected at the base or stem with a diamond, and
was marked with a crop and over-bit from the right, and a
swallow-fork in the left ear.   The brand as given by the defend-
ant was two T's, the first connected with a diamond at the stem
and the second with a diamond under it, but not connected.   The
mark as he gave it was a crop and over-bit in the right, and a
crop and swallow-fork in the left ear.   Upon the discovery of
this discrepancy the witness had the defendant arrested, and the
trial before the justice of the peace, Tom Haynes, was post-
poned for three weeks.

Pending the trial referred to, the justice of the peace instructed
the witness to sell the animal and return the money into court,
and pursuant to such instruction the witness sold the beef to
Hailey for twenty dollars, and disposed of the money as directed.
A few days after the examining trial, the witness went to
Marsh's hide house, where he found the hide, and made a criti-
cal examination of it, finding the marks and brands as he stated.
These marks and the brand he pointed out to E. M. and C. W.
Beeman, Wink. Hamilton and others.   The Beemans claimed
and recognized the hide as that of an animal which they con-
trolled.   The witness and Hailey disputed about there being a
crop off the left ear, and the witness, who claimed that there
was not, cut the ear off for Hailey's inspection, and Hailey ad-
mitted that witness was right.   The witness was before the
grand jury in November, 1876, and told all he knew about this
case.

On cross-examination, the witness stated that when he was
before the grand jury on this case, he knew all that he knew on
this trial.

J. P. Hailey testified, for the State, that he bought a steer and
yearling from the defendant in August, 1876, and, exhibiting
the bill of sale taken at the time, showed that it represented the
mark and brands as stated by the first witness.   This witness,
however, could not remember the mark on the animal, nor in
what particular respect it differed from the entry in the bill of
sale.   He had a dispute with old man McFall, after the examin-
ing trial, about the mark, and McFall brought him the ear,
which the witness looked at to humor McFall.   He did not re-
member that he admitted that McFall was right about the mark.
On his arrest the defendant returned the purchase money to the

witness, and the witness thereupon bought the animal from McFall for twenty dollars.

Cross-examined, the witness stated that he knew the defendant and old man McFall had a "kind of jower" about the animal. The witness wrote the bill of sale introduced by the State, giving therein a description of the marks and brands. The defendant "haggled" with the witness about the price of the animal, and made the witness pay his full price, twenty-one dollars.

C. W. Beeman testified, for the State, that at Marsh's hide house, in 1876, after the examining trial of the defendant, but before the indictment was found, A. W. McFall showed him, E. M. Beeman and others, the hide of a brindle red steer, which the witness recognized as that of an animal in his charge under a power of attorney from Mr. Bryant, of Falls county, who owned the animal. The brands and marks were as described by McFall. The witness had often been in the range of this animal, and had never seen another in that range in similar brand and mark. The witness had never given his consent to the taking of this animal. Witness was not before the grand jury on this case.

Cross-examined, the witness stated that in November, 1876, when the grand jury was in session, he lived four miles from Corsicana, and was frequently in town. He knew the facts testified to as well then as on this trial. He did not know where he was on the particular day on which this case was examined by the grand jury.

E. M. Beeman testified substantially as C. W. Beeman did, both on direct and cross-examination, adding that the animal controlled by them (C. W. and E. M. Beeman) for Bryant ranged near the defendant's house, and was the only animal in that mark and brand he had ever seen in that range. The State closed.

J. R. Williamson testified, for the defense, that the defendant was his son, and was a minor in 1876. In 1872 or 1873, the witness made the defendant a brand out of a piece of stove iron. The brand he then made was a T, connected at the stem with a diamond. This brand was never recorded. This brand was changed by removing the stem of the T, and altering the diamond into a triangle, and as changed was recorded a few days after the arrest of the defendant. The witness had known the animal alleged to be stolen from a calf. He owned it, and gave it to the defendant. He saw the defendant throw the animal down when a calf, and he held it while the defendant applied

his T-diamond brand in two places, on the hip and side. He, defendant, also put his mark, a crop and over-bit in the right, and crop and swallow-fork in the left ear, on the calf at the same time. The calf grew up on the range near the witness's house.

On the night before the defendant drove the animal to town, he and the witness penned it and one of the witness's yearlings, and the next day drove them to town, and the defendant sold them to Hailey at the special request of witness. The defendant did not want to sell his steer, but did so to accommodate the witness with the proceeds. Upon his arrest, he returned the purchase money to Hailey. After the examining trial the justice of the peace paid the witness the twenty dollars which the steer sold for. The defendant's brand was changed because he learned that a man near Dresden used the T-diamond brand. The steer in question was claimed by the defendant, was openly taken by him as his own, and was sold by him in open market.

Cross-examined, the witness could not say of what particular cow this steer was a calf, but thought it was calved by a cow he bought from Mr. Britton. He did not remember the brand of that cow, but she was in either the Britton or Fortson brand. He did not think the defendant ever owned another "cow-brute" in the T-diamond brand, but he had stock in that brand. He was still a minor when his brand was changed.

Ab. Love testified, for the defense, that he knew the defendant in 1876, and knew that prior to that time he had owned and used the T-diamond brand and the mark described by the last witness. The witness knew that the defendant had some few cattle in that mark and brand. He had helped the defendant brand horses in that brand. He did not know this particular animal.

James Patterson, for the defendant, testified substantially to the same effect as the witness Love.

The testimony of Anderson, referred to in the opinion, was presented by the State in rebuttal.

The motion for new trial assailed the verdict and the charge of the court, and raised substantially the questions involved in the opinion.

*Beale & Autry* filed an able brief for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, J.  Upon the trial of defendant for the theft of a steer, which the indictment alleged to be an estray, and that the owner thereof was to the grand jurors unknown, the State, over the objections of the defendant, was permitted to prove by one Anderson that, about four years after the alleged theft, the defendant sold him an animal having upon it the same brand that was upon the alleged stolen steer, and that said animal was afterwards claimed and proved away from witness by one Allen as being the property of one Bryant, and that witness informed defendant that the animal had been so claimed and proved away, and defendant paid him back the money he, witness, had paid for the animal.  This evidence was objected to by defendant when offered, but his objections were overruled; to which action of the court the defendant excepted.

We are of the opinion that this evidence was irrelevant and inadmissible.  As a general rule, the evidence must be confined to the issue, or tend to prove the issue, or constitute a link in the chain of proof.  Evidence of a distinct, substantive offense can not be admitted in support of another offense.  There are, however, well established exceptions to this general rule, but they will be found to be in cases which relate to *knowledge* or *intent* of the party as to some material fact which, though apparently collateral, had some bearing on the main fact.  (1 Whart. Cr. Law, 647; Whart. Cr. Ev., sec. 30 *et seq.*; Bish. Cr. Proc., sec. 1064; *Wilburn* v. *The State*, 41 Texas, 357; *Fore* v. *The State*, 5 Texas Ct. App., 257; *Gilbraith* v. *The State*, 41 Texas, 567, *Green* v. *The State*, 12 Texas Ct. App., 51.)

We can not perceive that the testimony of Anderson tended in the most remote degree to prove or disprove any issue in the case on trial.  The transaction with Anderson occurred long after the alleged theft, and bore no relation to it.  Whether or not it had any influence upon the minds of the jury, we can not know.  We think it was well calculated to prejudice the defendant, and to injuriously affect his rights upon the trial, and that the court erred in admitting it.  We might reverse the judgment for this error alone, but there are other errors shown by the record which we think it advisable to call attention to, in view of another trial of the cause.

It is alleged in the indictment that the steer was an estray, the owner of which was to the jurors unknown.  Upon the trial it was shown that the steer was not an estray, but was claimed as the property of one Bryant, and was in charge and under the

control of the two Beemans. It was also shown that McFall, who was a witness in behalf of the State, and who was also a witness before the grand jury that found the bill, knew, at the time he testified before the grand jury that the steer was claimed by the Beemans as the property of Bryant. If the grand jury had interrogated him in regard to the ownership of the steer, it is reasonable to suppose that he would have stated the fact, which was then within his knowledge, that the Beemans claimed the same, and the Beemans resided within four miles of the court house, and could have been summoned before the grand jury to testify as to the ownership of the animal. As presented to us, the evidence shows that the grand jury did not use reasonable diligence to ascertain the important fact of ownership, if in truth the steer belonged to Bryant. (*Jorasco* v. *The State*, 6 Texas Ct. App., 238.)

It seems that the prosecution, instead of endeavoring by its evidence to prove the allegations in the indictment, that the steer belonged to some one unknown, and was an estray, sought to prove the contrary. Having taken this course, when it had proved ownership in Bryant, or raised a reasonable doubt of the truth of the allegations in the indictment as to ownership, it must go farther and prove also that the grand jury which found the bill did not know the owner or claimant of the property, and could not have known the same from the witnesses, by the use of reasonable diligence. Failing in this, there was a fatal variance between the allegations in the indictment and the evidence as to ownership.

Again, proceeding upon the case attempted to be made out by the State, that Bryant was the owner of the steer, there is no proof of a want of consent on the part of Bryant to the taking. It has been held by this court that where the proof shows that one person owned the property and another person had the possession, management or control of it, the want of consent to the taking of both such parties must be shown; first, by the parties themselves; second, if the parties are not attainable, and this fact is shown, circumstantial evidence may be resorted to. (*Wilson* v. *The State*, 12 Texas Ct. App., 481, and authorities there cited.) In this case Bryant, the supposed owner of the steer, resided in an adjoining county. He was not produced by the State to prove his ownership of the alleged stolen animal, nor his want of consent to the taking thereof, nor was any reason given why he was not produced.

There is also a want of proof as to the venue of the offense. It is not shown by the statement of facts before us, either directly or circumstantially, in what county the alleged theft was committed.

There are other errors assigned in the case, but they are such as will not in all probability occur on another trial, and we do not think it would be profitable to discuss them.

Because of the errors we have noticed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered February 24, 1883.